IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO ARROYO,<br><br>    Plaintiff,<br><br>v.<br><br>UNIGUARD INSURANCE COMPANY,<br><br>    Defendant.<br>_____/ | No. C 13-02810 JSW<br><br>**ORDER REGARDING MOTION CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for partial summary judgment filed by plaintiff Pedro Arroyo ("Arroyo") and the cross-motion for summary judgment by defendant Uniguard Insurance Company ("Uniguard"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby denies Arroyo's motion for partial summary judgment and grants Uniguard's cross-motion for summary judgment.[1]

**BACKGROUND**

In this action, Arroyo contends that Uniguard breached a duty to defend an underlying lawsuit between Arroyo and Jack Neal and Sons ("JNS") and thus is liable for the default judgment entered against JNS. Uniguard contends that general liability insurance policy issued to JNS does not even potentially cover the claims asserted by Arroyo against JNS in the underlying lawsuit.

Arroyo had hired JNS to "develop and manage a vineyard on Arroyo's property." (Arroyo's RJN, Ex. B, ¶ 6.) Arroyo alleged that JNS did not perform as it had promised.

---

[1] The Court GRANTS the parties' requests for judicial notice ("RJN"). *See* Fed. R. Evid. 201.

Among the errors alleged, Arroyo claimed that JNS chose inappropriate rootstocks and/or selected poor quality vines, improperly planted the vines, damaged the vines with weed whackers, failed to properly prepare the soil, failed to properly manage the water resources available, including a failure to properly study the water needs and water availability, planting grapevines too late in the growing season, and mismanaged deer and turkey populations and their access to the grapevines. (*Id.*, ¶ 11.)

Uniguard denied coverage for the underlying suit. Arroyo settled the underlying suit with JNS. As part of the settlement, JNS defaulted in the underlying lawsuit and assigned its rights under the insurance policies with Uniguard to Arroyo.

The Court will address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.     Applicable Legal Standards.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its

initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(e)(3).

**B.     The Parties' Motions.**

Both of the motions raise the same legal issue – whether Uniguard owed a duty to defend in the underlying lawsuit. California's substantive insurance law governs in this diversity case. *State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 405 (9th Cir. 1989). In a dispute over insurance policy coverage, the burden is on the insured to bring the claim within the basic scope of coverage. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995). Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. The carrier must defend a suit which potentially seeks damages within the coverage of the policy." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (quoting *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 296 (1993)). The insured "need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose,* 6 Cal. 4th at 300. Furthermore, "'the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer.'" *Hudson*, 624 F.3d at 1267 (quoting *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 606 (1986)). In instances where "'there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer.'" *Id*. (quoting *CNA*, 176 Cal. App. 3d at 607). However, "an insured may not trigger the duty to defend by speculating about

3

extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995). "Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon facts known to the insurer at the inception of the suit." *Id.*

To interpret the meaning of the policy language, courts must first look at the written provisions of the policy. "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted).

Policy exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor of coverage. *MacKinnon*, 31 Cal. 4th at 648; *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998). An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. Any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. *MacKinnon*, 31 Cal. 4th at 648.

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions. *E.M.M.I., Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Any ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's reasonable expectations. *Id.*

Uniguard contends that several exceptions stated in the applicable insurance policies make clear that there was no potential for coverage. One of the exceptions on which Uniguard relies provides, in pertinent part, as modified by the Crop Management Services endorsement:

> j. Damage to property
> "Property Damage" to:
>> (5) That particular part of real property, including but not limited to vines or other growing crops, on which you . . . are performing operations, if, the "property damage" arises out of those operations; . . .

(Declaration of John D. Green, Ex. 1 at UCF2865.) Arroyo seeks to read "that particular part" to mean the specific piece of property that JNS was working on at a particular moment.

4

1  According to Arroyo's proposed construction, when JNS was tending to the weeds, and
2  damaged the vines, the weeds were the "particular part" of the property that JNS was working
3  on at that moment. However, neither the allegations in the complaint from the underlying
4  lawsuit nor the relevant authority supports Arroyo's position.

As courts in California have explained:

> Generally liability policies, such as the ones in dispute here, are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. . . . The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. . . . Rather liability coverage comes into play when the insured's defective materials or work cause injury to property *other than* the insured's own work or products.

*Maryland Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 967 (1990) (citations omitted) (emphasis added). "In other words, the contractor bears the risk of repairing or replacing faulty workmanship, while the insurer bears the risk of damage to the property of others." *Clarendon Amer. Ins. Co. v. General Security Indemnity Co.*, 193 Cal. App. 4th 1311, 1325 (2011) (internal quotation marks and citation omitted). Pursuant to exclusion j(5), "[t]he insurer is not obligated to indemnify a policy holder for property damage that occurs while the insured is performing operations on that property." *Id*. at 1326.

"In the case of a general contractor, all the work at the project is considered its work product, whereas in the case of a subcontractor . . . only its portion of the work, such as siding, is the work product and damage to other parts of the project is considered damage to other property." *George F. Hillenbrand, Inc. v. Insurance Co. of North America*, 104 Cal. App. 4th 784, 805 (2002); *see also Clarendon America Ins. Co. v. General Sec. Indem. Co. of Arizona*, 193 Cal. App. 4th 1311, 1314, 1325-26 (2011) (finding there was no duty to defend pursuant to the faulty workmanship exclusionary provisions j(5) and (6), which refer to the "particular part" of the property, for a lawsuit alleging defects in the construction of a new home where the contractor signed an agreement to construct a custom single family home); *Legacy Partners, Inc.*, 2010 WL 1495198, *9 (S.D. Cal. April 14, 2010) (finding that j(5) exclusion applied where all of the damages alleged in the underlying lawsuit arose out of the contractor's operations on the property).

5

The analysis set forth in *Roger H. Proulx & Co. v. Crest-Liners, Inc.*, 98 Cal. App. 4th 182 (2002), a case relied on by Arroyo, is in accord. In *Proulx*, a subcontractor was hired to furnish and install roofing and waterproofing on a 25-story commercial building, including a waterproof liner in a tank that was part of the air conditioning system. *Id.* at 189. The waterproof liner leaked and had to be repaired. The leaks damaged pumps and valves. The costs associated with the leaky liner and its repair included replacing a valve pit, painting the office area, repairing the office area, and patching drywall, in addition to replacing the defective waterproof liner. *Id.* at 189-90. In light of this evidence, the insurance company was unable to prove that the damage was limited to the part of the real property on which the subcontractor was performing work, *i.e.* the waterproof liner and/or other waterproofing materials. Therefore, the exclusion did not apply. *Id.* at 202-203.

Arroyo's attempts to divide the single project for which he hired JNS into separate "parts" is unavailing in light of the allegations in the underlying complaint. The underlying complaint alleges that JNS was hired to "develop and manage a vineyard on Arroyo's property." (Arroyo's RJN, Ex. B, ¶ 6.) The complaint does not allege separate contracts or projects, one for planting the vineyards and another one for maintaining them. The complaint describes one agreement – to develop and manage a vineyard. All of the property damage for which Arroyo alleges in the underlying complaint was the part of the property that JNS was hired to perform work.

Arroyo's attempt to argue damage that was caused by JNS's purported inaction, such as damage cause by turkeys, deer, and frost and by inadequate watering, does not fare any better. All of the damage alleged in the underlying complaint is alleged to be caused by JNS's failures and mistakes in the planting and management of the vineyard. Arroyo alleged that JNS failed to properly manage the water resources available, including a failure to properly study the water needs and water availability and that JNS mismanaged deer and turkey populations and their access to the grapevines. (Arroyo's RJN, Ex. B, ¶ 11.) The alleged damage arose out of JNS's operations. Accordingly, the Court finds that Uniguard did not owe a duty to defend JNS in the underlying complaint and, thus, is not liable to Arroyo. Therefore, the Court denies Arroyo's

6

motion for partial summary judgment and grants Uniguard's cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court DENIES Arroyo's motion for partial summary judgment and GRANTS Uniguard's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 17, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE